IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TATIANA DWAINIA TURNER § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-1414-D |
| VS. § | |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Tatiana Dwainia Turner ("Turner") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying her claim for a period of disability and disability insurance benefits under Title XVI of the Act. For the reasons that follow, the court vacates the Commissioner's decision and remands this matter for further proceedings.

I

In 2010 Turner applied for Title XVI benefits, alleging that she has been disabled since 1998, when she was 15 years old. Her claim was denied initially and upon reconsideration. She requested a hearing before an administrative law judge ("ALJ"), and the hearing was held in August 2011.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a)(4) (2012) and concluded as follows: (1) Turner has not engaged in substantial

gainful activity since she applied for benefits; (2) she has severe impairments of degenerative disc disease with residuals from a remote motor vehicle accident, obesity, decreased cognitive function, bipolar disorder, and anxiety; (3) she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) she has the residual functional capacity ("RFC") to lift and carry 25 pounds frequently and 50 pounds occasionally, to sit, stand, or walk 6 hours in an 8-hour workday, and to frequently climb, stoop, kneel, crouch, and crawl but only occasionally reach overhead bilaterally; she should avoid driving or operating motor vehicles because of her anxiety, cannot work with hazardous conditions or handling more than occasional changes in the work setting because of her low stress tolerance, could not work requiring high production quotas or public interaction, and is limited to superficial interaction with coworkers and work not requiring extensive concentration; (5) she is unable to perform any past relevant work; and (6) considering her age, education, work experience, and RFC, there exist jobs in significant numbers in the national economy that she can perform. The ALJ therefore found that Turner had "not been under a disability, as defined in the Social Security Act, since July 23, 2010, the date the application was filed." R. 19. The Appeals Council denied Turner's request for review, making the ALJ's decision the final decision of the Commissioner.

Turner seeks judicial review of the Commissioner's decision, arguing that there were errors in multiple steps of the five-step analysis. She contends that the ALJ improperly found at step three that she does not satisfy the listing for mental retardation; that the hypothetical

questions posed to the vocational expert ("VE") did not reasonably incorporate all of her disabilities, and that the ALJ's reliance on the VE's testimony was unjustified; and that the ALJ did not consider all of the required factors before declining to give weight to the opinions of Turner's treating specialist.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted). "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per

curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g.,*

*Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Turner contends that the ALJ erred in failing to find that she meets the listing for mental retardation.[1]

A

If a claimant meets a listing at step three, she is considered disabled. *See, e.g., Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009) (per curiam) (quoting 20 C.F.R. § 416.920(a)(4)(iii) ("Step three provides that '[i]f you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.'")). Listing 12.05, which addresses mental retardation, provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function .
> . . .

---

[1] Because the court is remanding for the Commissioner to evaluate whether Turner meets the mental retardation listing at step three, it need not address Turner's other arguments.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05.  To meet the requirements of Listing 12.05, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. § 404.1525(d).  Notably, this listing "contains 'an introductory paragraph with the diagnostic description for mental retardation' and 'four sets of criteria (paragraphs A through D).'"  *Randall*, 570 F.3d at 653 (quoting Listing 12.00A).  The diagnostic description contains three distinct elements: (1) significantly subaverage general intellectual functioning, and (2) deficits in adaptive functioning, that are (3) manifested before age 22.  *See id.* at 656-60.

    The Social Security Administration ("SSA") has "stated that the definition of mental retardation [in the diagnostic description] is 'consistent with, if not identical to, the definitions of mental retardation used by the leading professional organizations.'"  *Miller v. Astrue*, 2008 WL 8053474, at *3 (S.D. Tex. Sept. 8, 2008) (citing *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018-01, at 20,022 (Apr. 24, 2002)).  Yet the leading professional organizations have produced at least four possible definitions of mental retardation, and the SSA has "expressly declined to adopt any particular one."  *Barnes v. Barnhart*, 116 Fed. Appx. 934, 942 (10th Cir. 2004) (citing 67 Fed. Reg. at 20,022).  This leaves unclear the standard by which ALJs are to determine when a claimant has deficits in adaptive functioning.  The American Psychiatric Association, for example, requires "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."  67 Fed. Reg. 20018-01, at

20,022 (quoting the *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM-IV")). One court that evaluated this definition concluded that a "diagnosis of mental retardation requires '[c]oncurrent deficits or impairments in present adaptive functioning (i.e. the person's effectiveness in meeting the standards expected for his or her age by his or her cultural group).'" *Miller*, 2008 WL 8053474, at *3 (quoting DSM-IV). The American Psychological Association has adopted a slightly different definition, requiring "significant limitations in adaptive functioning, which exist concurrently," where "the criterion of significance is a summary index score that is two or more standard deviations below the mean." 67 Fed. Reg. 20018-01, at 20,022 (quoting *Manual of Diagnosis and Professional Practice in Mental Retardation*, 1996).

In light of these definitions, multiple courts have determined that, although the ALJ may choose any standard consistent with the SSA's directive for evaluating mental retardation, and therefore adaptive functions, the ALJ cannot use an improvised definition. *See, e.g., Barnes*, 116 Fed. Appx. at 942 (remanding where definition for deficits in adaptive functioning was "essentially improvised"); *Blancas v. Astrue*, 690 F.Supp.2d 464, 483 (W.D. Tex. 2010) (remanding because "ALJ appear[ed] to have utilized an ad hoc approach in determining that Plaintiff did not have deficits in adaptive functioning"); *Durden v. Astrue*, 586 F.Supp.2d 828, 840 (S.D. Tex. 2008) (same).

B

Turner contends that "[t]he evidence supports the contention that [she] has some deficits in her adaptive functioning" and that the ALJ "use[d] no clear methodology to

- 8 -

determine the extent of any deficits in [her] adaptive functioning." P. Br. 14. She maintains that the record demonstrates that she is unable to perform some adaptive functions because she does not like to be around crowds, is afraid to go anywhere alone, cannot shop alone, and is afraid to travel in a car. She was in special education while in school, dropped out after the ninth grade, and had "low vocabulary and comprehension skills." R. 948. Turner does not have a home of her own, and she testified at the hearing that she can only cook very simple food. Turner argues that, despite these deficits, and without employing a clear methodology, the ALJ found that she did not have deficits in her adaptive functioning.

The Commissioner responds that the record supports the ALJ's determination that Turner did not have deficits in adaptive functioning. The Commissioner points to a psychological consultive examination in which Turner reported that her daily activities include cooking, cleaning, doing laundry, and paying bills. She has also babysat for a neighbor, dated and interacted with neighbors, and gone to the movies or shopped when there are not large crowds. The Commissioner also maintains that "Turner's work history as a home attendant, survey worker, and caretaker contradict a finding of deficits in adaptive functioning." D. Br. 8-9. The Commissioner does not assert, however, that the ALJ used any specific standard for evaluating whether any of Turner's limitations rise to the level of deficits in adaptive functioning.

C

The court is unable to determine whether substantial evidence supports the ALJ's finding at step three because she did not set out a standard by which she analyzed whether

- 9 -

Turner has deficits in adaptive functioning. *See, e.g., Miller*, 2008 WL 8053474, at *8 (remanding and remarking that "the ALJ's failure to discuss what standard [the ALJ] used to evaluate Plaintiff's deficits in adaptive functioning makes it difficult for this Court to determine whether the ALJ's decision is supported by substantial evidence"). The ALJ's decision includes only one sentence that directly addresses Listing 12.05:

> The claimant's representative has argued that Listing 12.05 applies; however, the claimant's decline in intellectual measures ha[s] been attributed to injuries from a car accident (i.e., resulting in a loss of previous abilities), nor has she demonstrated the deficits in adaptive functioning that are the concern of true mental retardation cases.

R. 12. It is only in the context of other mental health listings that the ALJ may have considered the potential deficits in Turner's adaptive functioning.

In examining Listings 12.02, 12.04, and 12.06, the ALJ was required to assess Turner's limitations in activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. After analyzing these "severity criteria," the ALJ found that Turner has "mild restriction" on activities of daily living, "moderate difficulties" with social functioning, "moderate difficulties" with concentration, persistence or pace, and no episodes of decompensation. R. 13. The ALJ therefore concluded that Listings 12.02, 12.04, and 12.06 were not satisfied because Turner's mental impairments "do not cause at least two 'marked' limitations." *Id.* These findings are relevant to an assessment of deficits in adaptive functioning under Listing 12.05 because § 12.00(C)(1) states that, in assessing the severity criteria, "[a]ctivities of daily living include

adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." *See also Arce v. Barnhart*, 185 Fed. Appx. 437, 438 (5th Cir. 2006) (per curiam) (recognizing that 12.00(C)(1)'s list of activities is relevant to a Listing 12.05 adaptive functions analysis). But these daily activities and the appropriate standards for assessing deficits in adaptive functions do not overlap to the extent necessary to serve as a basis for analyzing whether Turner meets Listing 12.05. For instance, unlike DSM-IV analysis, these criteria do not include functional academic skills and work. *See Miller*, 2008 WL 8053474, at *6 n.5. As a result, analyzing only the severity criteria required to find other listed mental disorders may not "substitute for analysis of the deficits in adaptive functioning required by Listing 12.05." *Id.* at *7.

Because the ALJ analyzed the severity factors applicable for other mental disorders without connecting her analysis to the conclusory finding that Turner does not have deficits in adaptive functions, the ALJ merely used an "*ad hoc* approach." *Blancas*, 690 F.Supp.2d at 483. The ALJ's use of an *ad hoc* approach does not of itself require reversal. When it is apparent that the claimant does not have deficits in adaptive functioning, many courts, including the Fifth Circuit, have affirmed such a finding despite the ALJ's failure to articulate a standard.[2] *See also Blancas*, 690 F.Supp.2d at 480 ("The lack of a clear standard

---

[2]*See, e.g., Randall*, 570 F.3d at 654 (where claimant "could cook, clean, communicate, manage time, and travel independently; she was alert and responsive; and she possessed good receptive and expressive skills for everyday conversational purposes, good social skill, good abilities to attend and concentrate, good judgment and reflective cognition, and fair

- 11 -

for measuring deficits in adaptive functioning is not problematic in [] clear-cut cases, but creates difficulties in borderline cases[.]"). But it is not apparent from the record whether Turner has deficits in adaptive functioning. There are several facts that demonstrate that she has limitations in some of the areas that are potentially relevant to an analysis of Listing 12.05. *See Barnes*, 116 Fed. Appx. at 942-43 ("The record in this case clearly shows that claimant has limitations in some [relevant] areas . . . , but whether they . . . meet the requirements of whichever standard the ALJ might decide to use[] is unknown."). For instance, Turner's academic history indicates she was in special education throughout her time in school, before dropping out in the ninth grade. She was unable to name three presidents and unable to describe the importance of Dr. Martin Luther King, Jr. *Cf. Blancas*, 690 F.Supp.2d at 481 (remanding where claimant was able to give his date of birth and name three presidents in his lifetime); *Miller*, 2012 WL 8053474, at *6 (remanding where claimant could not identify the current president). She testified at her hearing that, although she has a boyfriend, she has not had any friends since 2007, when her significantly older husband

---

reasoning" and where the psychologist stated that claimant's physical and mental conditions "would not preclude gainful competitive employment"); *Arce*, 185 Fed. Appx. at 439-40 (where claimant's "ability to travel in unfamiliar places or use public transportation was only moderately limited," and she "could do housecleaning and use a computer, did not need help grooming or communicating, and . . . got along well with people when she worked," despite needing "help cooking, paying bills, shopping, riding a bus and taking care of children"); *Hancock v. Astrue*, 667 F.3d 470, 475-76 (4th Cir. 2012) (where "claimant ha[d] worked several jobs and performed a variety of tasks which would be expected to be beyond the capacity of a mentally retarded person," had "the ability to shop, pay bills, and make change," took "care of three small grandchildren," "[did] the majority of her household's chores, including cooking and baking," and "[was] attending school to obtain a GED.").

died, thus suggesting at least some deficit in social skills. *See id.* at \*7 (noting that claimant's "three divorces and lack of friends could suggest at least some problems with social/interpersonal skills"). She also testified that, although she can cook, she is limited to cooking only very simple meals, such as noodles. Her ability to transport herself is limited because she does not drive and her anxiety interferes with her ability to ride the bus.

The ALJ addressed some of these limitations but did not analyze others. She concluded that Turner could go in public places and shop when there are not large crowds, that she had good relationships with family, and that she performed chores, but she also recognized that Turner has "moderate difficulties" with social functioning and concentration, and a "mild restriction" on daily living, which indicate that Turner suffers at least some level of deficits in her adaptive functioning. *See Pritchett v. Comm'r of Soc. Sec. Admin.*, 2012 WL 1058123, at \*7 (N.D. Tex. Mar. 29, 2012) (Stickney, J.) (stating that ALJ's finding "that Plaintiff's intellectual functioning caused a moderate effect on her ability to perform daily activities . . . [made] apparent that the ALJ at least recognized some deficits in Plaintiff's adaptive functioning"). By contrast, the ALJ did not discuss limitations on work in the context of Listing 12.05, although she recognized such limitations implicitly by finding that Turner can "perform no more than simple, routine, repetitive tasks." R.14. The ALJ also did not consider at step three whether Turner has a deficit in her functional academic skills, which would be relevant under the DSM-IV standard. *See* 67 Fed. Reg. 20018-01, at

20,022.[3] Finally, to the extent the ALJ found that any deficit manifested itself after age 22, she did not state this in her decision, and the record does not make clear which deficits manifested themselves only after Turner turned 22.

When explicitly applying an appropriate standard for mental retardation, the ALJ may find that, despite Turner's limitations, she does not have sufficient deficits in adaptive functioning to satisfy Listing 12.05. But "[i]t is not for this Court to speculate as to how the ALJ would find on this matter." *Pritchett*, 2012 WL 1058123, at *7 (citing *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001)). The ALJ's decision "must stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In this case, the court "must know what standard the ALJ used to evaluate [Turner's] deficits in adaptive functioning" in order to "evaluate properly" the ALJ's finding. *Miller*, 2008 WL 8053474, at *8. Where, as here, there are sufficient facts in the record to make possible a finding regarding deficits in adaptive functioning, and the ALJ has not based her finding on a recognized standard (i.e., a standard consistent with the SSA's directive for evaluating mental retardation), the court cannot review the decision for substantial evidence or legal error.

---

[3]The only statement that indicates the ALJ may have considered academic functions at step three is the conclusion that Turner's "decline in intellectual measures ha[s] been attributed to injuries from a car accident (i.e., resulting in a loss of previous abilities)." R. 12. But the Commissioner appears to concede that Turner's adaptive functioning following the automobile accident, but before she turned 22, is relevant. And the record does not contain substantial evidence indicating that any potential deficits in adaptive functioning occurred after Turner became 22.

\* \* \*

For the reasons explained, the Commissioner's decision is VACATED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

November 2, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 15 -